IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STATE OF NEBRASKA,<br><br>                 Plaintiff,<br><br>               v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; and GINA McCARTHY, Administrator, U.S. EPA,<br><br>               Defendants. | Civil Action No. 4:14-cv-3006 |

## REPLY MEMORANDUM IN SUPPORT OF EPA'S MOTION TO DISMISS

### INTRODUCTION

Nebraska, in both its Complaint and its response to EPA's motion to dismiss, has failed to identify a "final agency action" subject to judicial review under the Administrative Procedure Act ("APA"). Even if the State had challenged a final agency action, that challenge would have to be brought in the D.C. Circuit Court of Appeals pursuant to section 307(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7607(b). Nebraska's claim has been brought at the wrong time in the wrong court under the wrong statute. This case must be dismissed.

### ARGUMENT

I.  **Nebraska Has Failed to Challenge any Final Agency Action**

Nebraska has filed a cause of action under the APA. Complaint ¶¶ 27-30. The APA limits nonstatutory judicial review to "final agency action." 5 U.S.C. § 704. Rather than identifying a final agency action that forms the basis for its APA claim Nebraska attempts to

selectively use language in the Energy Policy Act (the "Policy Act") to bypass the APA's finality requirement. Even this haphazard attempt to identify a final action is inconsistent with the State's own pleading. In any event, the Policy Act does not provide subject matter jurisdiction for Nebraska's claim.

> A. **Nebraska, In Its Complaint, Challenges the Clean Air Act Proposed Rule – Such A Challenge Is Clearly Impermissible**

Nebraska, in its response brief, attempts to change the nature of its cause of action, arguing that the nature of its "claim" is that EPA failed to follow a directive set out in the Policy Act. Nebraska Br. at 1. This suit has not been, and cannot be brought under the Policy Act, as that statute provides no cause of action, and confers no subject matter jurisdiction on this Court. Consequently, Nebraska's claim in the Complaint may be brought, if at all, consistent with the APA (which provides for judicial review of agency actions taken under other statutes). Thus, Nebraska can only challenge "final" agency action taken under the Policy Act to the extent allowed by the APA.

In its Complaint the State clearly acknowledges that the action it challenges is the EPA's Clean Air Act Proposed Rule. *See* Complaint ¶ 2 ("State of Nebraska ('State') challenges the Proposed Rule as a violation of the Energy Policy Act of 2005"). Thus, Nebraska alleges that the Proposed Rule constitutes the alleged final agency action being challenged, and the gravamen of its challenge is an argument that EPA violated a requirement of the Energy Policy Act in proposing the CAA action. As EPA explained in its opening memorandum, the Proposed Rule is not final agency action because it is a proposal, is tentative in nature, does not represent the consummation of EPA's decisionmaking process, and does not determine rights or obligations or impose binding legal consequences. EPA Br. 1-2, 15-21 (Dkt. 9). Under the applicable test for

"final agency action" set out by the Supreme Court in *Bennett v. Spear*, 520 U.S. 154 (1997), the Proposed Rule is thus not subject to APA judicial review.

> **B.    EPA's Analysis in the Proposed Rule Cannot be Carved Out and Separately Challenged in This Case**

Rather than moving forward with the claim it plead, a challenge to EPA's Proposed Rule, Nebraska attempts to twist its claim into some type of challenge to an asserted "final agency action" that is a subpart of the Proposed Rule, but is somehow distinct from the proposal. Specifically, the State now claims that it is not attempting to challenge the Proposed Rule at all, but is instead challenging considerations made during the course of EPA's development of the Proposed Rule. Nebraska Br. at 13-18. This is nonsense – EPA's considerations supporting a proposed rule are part and parcel of the Proposed Rule. A challenge to the underlying substance or underpinning of EPA's proposed new source performance standard is premature at the proposal stage of a rulemaking.

Rulemaking proceedings such as the one involved in this case are conducted pursuant to 42 U.S.C. § 7411 and the rulemaking requirements set out by Congress in 42 U.S.C. § 7607(d).[1] EPA is required to publish a "notice of proposed rulemaking" (such as the one challenged here) that sets out "a statement of its basis and purpose" that includes factual data upon which the proposal is based, the methodology used in obtaining and analyzing the data, and the major legal interpretations and policy considerations underlying the proposal. 42 U.S.C. § 7607(d)(3). "All data, information, and documents" upon which the proposed rule relies must be included in a publicly accessible docket. 42 U.S.C. § 7607(d)(3)-(4). EPA must allow time for public notice and comment, and the final rule must contain a response to each significant comment, criticisms,

---

[1] In the Proposed Rule, EPA specifically invoked the following CAA authorities issuing the proposal; 111, 301, 302, and 307(d)(1)(C), 42 U.S.C. § 7411, 7601, 7602, 7607(d)(1)(C). 79 Fed. Reg. 1502/2 (Jan. 8, 2014). These provisions authorized EPA to issue the rulemaking proposal. No provision of the Policy Act provides such authority.

and new data submitted during the comment period.  42 U.S.C. § 7607(d)(5)-(6).  The sole forum to challenge "any standard of performance or requirement under section 7411 . . . or final action taken, by the Administrator under [the CAA]" is "only in the United States Court of Appeals for the District of Columbia."  42 U.S.C. § 7607(b)(1).  *See generally Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984) (holding that the D.C. Circuit's interest in protecting its future jurisdiction allows it to assert jurisdiction over related preceding issues).  Likewise, the sole forum for challenging procedural determinations made by the EPA Administrator during this process is in the United States Court of Appeals for the D.C. Circuit.  42 U.S.C. § 7607(d)(8).

If EPA ultimately adopts a new source performance standard, that standard will reflect the emissions reductions achievable through application of the "best system of emission reduction . . . adequately demonstrated," taking into account cost and other factors.  42 U.S.C. § 7411(a)(1).  Identifying the best system of emission reduction is thus the main substance or underpinning of the rulemaking challenged by the State in this case.  *See* 79 Fed. Reg. 1,462/1.[2] Considerations underlying the selection of the best system of emission reduction consequently are part and parcel of the standard-setting process itself.  Nebraska treats its challenge to EPA's consideration of the technological feasibility of a particular type of technology (carbon capture and sequestration) as if it is separate and distinct from EPA's rulemaking process.  That claim is flatly inconsistent with 42 U.S.C. § 7411, with caselaw, and with the record developed by EPA up to this point in the agency's on-going rulemaking.

---

[2] Under applicable caselaw, discussed in detail at 79 Fed. Reg. 1,462-67, EPA determines the best system of emission reduction after considering, *inter alia*: (1) technological feasibility; (2) emissions reductions generated by the system; (3) costs; (4) the fact that the purpose of 42 U.S.C. § 7411 is to promote the development and implementation of technology.

Put another way, Nebraska attempts to use the Policy Act to nullify both the APA's finality requirement and the explicit structure Congress set out in the CAA to govern challenges to CAA rulemakings. The Policy Act states that:

> No technology, or level of emission reduction, solely by reason of the use of the technology, or the achievement of the emission reduction, by 1 or more facilities receiving assistance under this Act, shall be considered to be--
>
> (1) adequately demonstrated for purposes of section 7411 of this title.

42 U.S.C. § 15962(i). This language does not prohibit any type of EPA proposal and does not require EPA to take any action. Nor does it eliminate the APA's core requirement of finality as a prerequisite for review of agency action. This language only speaks to which technologies may be considered "adequately demonstrated" when EPA makes the substantive determination of the best system of emission reduction, a determination that EPA will make only when (and if) it ultimately adopts a new source performance standard ("NSPS"). This provision of the Policy Act provides a legal standard against which to judge the lawfulness of a final NSPS promulgated by EPA under the CAA. There is simply no textual or precedential support for Nebraska's out-of-whole-cloth assertion that the Policy Act creates a cause of action justiciable outside the bounds of all established notions of finality.[3] Indeed, Nebraska's attempt to obtain judicial review of the Proposed Rule is doubly premature because the meaning of this Policy Act provision is clearly and precisely one of the pending issues in the on-going CAA rulemaking

---

[3] Nebraska cites *Lands Council v. Powell*, 395 F. 3d 1019, 1026 (9th Cir. 2005), and *City of Sausalito v. O'Neill*, 386 F. 3d 1186, 1206 (9th Cir. 2004), in support. Nebraska Br. at 17. Since both of these cases involved review of final agency action (final Environmental Impact Statements), they have no apparent relevance here. *See* 395 F.3d at 1025; and 386 F.3d at 1195. Similarly, EPA's endangerment finding reviewed by the D.C. Circuit in *Coal. for Responsible Regulation v. EPA*, 684 F. 3d 102 (D.C. Cir. 2012), involved judicial review of a final agency determination which had gone through a proposal and notice-and-comment before EPA took the definitive action reviewed by the court. *See* 74 Fed. Reg. 66,500 (Dec. 15, 2009) (reciting procedural history of EPA's endangerment finding). The reference to this case at page 16 of Nebraska's brief consequently provides no meaningful support for Nebraska's claim.

proceeding. *See* EPA Memorandum at 2, 8-9 and 79 Fed. Reg. 10,750.[4]  In fact, Nebraska does not, and cannot cite to a single instance of a court recognizing an APA challenge to a proposed rule or notice of proposed rulemaking.

Lest there be any doubt, we show again below why no parts or subparts of EPA's on-going rulemaking are a justiciable final action.

### 1. EPA's Consideration of Federally Funded Facilities Is Not the Consummation of the Agency's Decisionmaking Process

Under *Bennett v. Spear* an agency action is considered "final" where such action marks the "consummation of the agency's decisionmaking process" from which "legal consequences will flow." 520 U.S. at 177-78. "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Mass.*, 505 U.S. 788, 797 (1992). The agency must have made up its mind, and its decision must have "inflict[ed] an actual, concrete injury" including upon the party seeking judicial review. *Williamson County Regional Planning v. Hamilton Bank*, 473 U.S. 172, 193 (1985). *See also Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731-32 (D.C. Cir. 2003) (a statement of the agency's intention to make a preliminary determination that appellant's sprinkler heads present a product hazard was not APA "final agency action" because there was "no order compelling [the appellants] to do anything," and the agency had not yet taken the steps required under the statutory scheme for its actions to have legal consequences). Such an injury typically is not caused when an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party. *See DRG*

---

[4] Nebraska mistakenly characterizes EPA's Notice of Data Availability as "*post hoc*" and asks this Court to ignore it. Nebraska Br. at 14-15. The Notice of Data Availability is part of the on-going rulemaking, just as the proposed rule is. It is not a post-final rule justification by agency counsel, but an action signed by EPA's Administrator which could serve as part of the predicate for final agency action, should EPA ultimately take final action in the rulemaking.

*Funding Corp. v. HUD*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) ("[C]ourts have defined a nonfinal agency order as one, for instance, that 'does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action' ") (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)).[5]

Nebraska argues that EPA consummated its decisionmaking process "when it published the Proposed Rule containing consideration of the Federally-Funded Facilities." Nebraska Br. at 13. This "consummation" is based on the theory that publication alone constitutes impermissible "considerations" in taking final action on the NSPS proposal even if EPA were to subsequently change its position. *Id.* at 13-14. An agency's preliminary recommended approach to a rulemaking, however, is not binding, has no legal effect, and injures no one because it is utterly lacking in legal effect. It therefore does not constitute final agency action. *See Franklin v. Mass.*, 505 U.S. at 798 (holding that an agency report which "serves more like a tentative recommendation than a final and binding determination" does not constitute final agency action). Instead, an agency must issue "a definitive statement of its position" to qualify as final for purposes of judicial review. *Bell v. New Jersey*, 461 U.S. 773, 779-80 (1983). EPA's identification, in the Proposed Rule, of determinations it <u>might</u> make in a future final rule after fully considering public comments, are no more than tentative recommendations, are not definitive, and are not properly considered final agency action.

### 2. The Proposed Rule did not Determine any Rights or Obligations

The Proposed Rule creates no rights, imposes no obligations, and creates no legal consequences for Nebraska or any other entity. In order for an agency action to create "legal

---

[5] Caselaw typically points to "injury" for APA finality purposes being inflicted on the party seeking review, though *Bennett v. Spear* does not expressly address that issue. This issue is an academic one here because the Proposed Rule does not have a binding effect on any entity.

7

consequences" of the type contemplated in *Bennett v. Spear* "the agency must have made up its mind, and its decision must have inflicted an actual, concrete injury upon the party seeking judicial review." *AT&T v. EEOC*, 270 F.3d 973, 975 (D.C. Cir. 2001) (internal citations and quotations omitted). *See also Center for Auto Safety v. National Highway Traffic Safety Admin.*, 452 F.3d 798, 810 (D.C. Cir. 2006) ("In sum, the 1998 policy guidelines do not, as appellants claim, establish new rights and obligations for automakers."). Courts typically employ a pragmatic and flexible approach to determine if an administrative action is "final," and hence reviewable. *Ciba-Geigy v. EPA*, 801 F.2d 430, 435-36 (D.C. Cir. 1986) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-50 (1967)). When an agency has not taken final action, judicial intervention may "den[y] the agency an opportunity to correct its own mistakes and to apply its expertise" and "leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242 (1980); *see also Ciba-Geigy*, 801 F.2d at 435-36. EPA must be given an opportunity complete its rulemaking process before the Proposed Rule has any legal impact on Nebraska.

Nebraska argues that legal consequences flow from publication of the Proposed Rule for a host of flawed reasons. Nebraska Br. at 16-17. Nebraska relies on the following list of "legal consequences:" (1) the CAA's statutory requirement to publish a final rule within one year of the Proposed Rule; (2) the public may comment on the Proposed Rule; (3) EPA's commitment to publish non-binding draft guideline documents "upon or after proposal" of standards when final standards are published; (4) a Presidential Memo which requires a separate rulemaking by a later date that is not contingent upon this proposal; and (5) the date under which a source is considered to be "new" and therefore potentially subject to a new source performance standard is

8

the date of publication of the proposal. Nebraska Br. at 16-17. None of these events inflict any type of binding legal obligation on Nebraska, on any emitting entity, or on the public, or constrain EPA's substantive discretion in any way. To begin with, Nebraska's first, third and fourth "consequences" are potential obligations for EPA to act; no obligation is imposed on Nebraska or other entity. Also, establishing an internal deadline does not commit the Agency to a particular action, and does not establish that the Proposed Rule is final for APA review purposes. *See Friends of S.E.'s Future v. Morrison*, 153 F.3d 1059, 1063 (9th Cir. 1998). Additionally, with respect to the first "consequence," EPA may simply withdraw its proposal (as occurred with the 2013 proposal, *see* EPA Memorandum at 5-6), imposing no obligations on anyone. *See* 42 U.S.C. section 7411 (b)(B) (actions taken within one year of proposed standard are only those EPA "deems appropriate). Nebraska's second "consequence" merely outlines the rulemaking process – Nebraska is free to comment, but is not required to do so. Nebraska's final listed consequence would occur as a result of a statutory requirement, and moreover would only occur if EPA promulgates final standards. EPA Br. at 15-21; see also *Las Brisas Energy Center, LLC v. EPA*, Case No. 12-1248 (D.C. Cir.) (dismissing lawsuit seeking review of an EPA proposed rule under 42 U.S.C. § 7411 based on this same argument).

In short, the Proposed Rule itself does not create any legal obligations sufficient to establish finality for purposes of APA review. *See Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005) ("if the practical effect of the agency action is not a certain change in the legal obligations of a party, the action is non-final for the purpose of judicial review"); *Acker v. EPA*, 290 F.3d 892, 894 (7th Cir. 2002) (finding no final agency action when "[a]s a practical matter, the order has no legal force except to impose upon Acker the already-existing burden of complying with the CAA and its implementing regulations"). Nebraska's "legal consequences"

argument thus fails because the State is unable to show that EPA has "inflicted an actual, concrete injury upon the party seeking judicial review." *AT&T v. EEOC*, 270 F.3d at 975.  *See also State of Nevada v. Watkins*, 914 F.2d 1545, 1563 (9th Cir. 1990) ("It is the imposition of an obligation or the fixing of a legal relationship that is the indicium of finality of the administrative process") (quoting from *Getty Oil Co. v. Andrus*, 607 F.2d 253, 256 (9th Cir.1979)).  None of the procedural rulemaking process requirements identified by Nebraska creates any obligation on Nebraska's part, determines any rights, or otherwise creates legal consequences that flow from the Proposed Rule itself.  *See Action on Smoking & Health v. Department of Labor*, 28 F.3d 162, 165 (D.C. Cir. 1994) (OSHA inclusion of certain substances in proposed omnibus rulemaking was not reviewable where no legal consequences attached to such inclusion; petitioner could challenge action if and when rulemaking generated "concrete, legal ramifications for petitioner").[6]

### II. Nebraska's Asserted Claim, if Recognized, Would Undermine the Rulemaking Process and Judicial Review Provisions Set Out by Congress

Allowing Nebraska's challenge to the content of EPA's Proposed Rule would seriously undermine the CAA administrative notice and comment process required by Congress.  *See U.S. Tel. Ass'n v. F.C.C.*, 28 F.3d 1232, 1234 (D.C. Cir. 1994) ("Obviously, if the standards are subject to notice and comment, it would be premature to determine if they are reasonable and authorized by the statute.").  To permit judicial review of the contents (or basis for) EPA's

---

[6] Nebraska urges an expansive interpretation of notions of finality here (essentially disregarding them) because "[t]he State has no other adequate remedy in a court."  Nebraska Br. at 9.  This is palpably incorrect, and urges judicial disregard of the law. At this point in the rulemaking process, Nebraska can assert its concerns with EPA through the notice and comment process. Should EPA issue a final NSPS and persist in what Nebraska believes to be improper consideration of technology receiving assistance under the Policy Act, Nebraska can seek to overturn the Final Rule on that basis.  *See, e.g.* 42 U.S.C. § 7607(d)(9) (court may reverse EPA action "otherwise not in accordance with law").  Given this, it is difficult to see that Nebraska has suffered any injury whatsoever and therefore lacks standing to bring its action.

proposed new source performance standard would substantially and impermissibly re-write the Clean Air Act's judicial review provision, nullify the Act's provisions regarding the rulemaking process, and potentially open the door to review by district courts across the country of *every* proposed new source performance standard, and potentially to other CAA rulemakings.

The CAA expressly provides for court of appeals judicial review of "action of the Administrator in promulgating any [NSPS]" (plus other listed actions), as well as "any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter." 42 U.S.C. § 7607(b)(1). Nebraska relies on a stilted reading of this provision to suggest that although Congress expressly made only "promulgated" new source performance standards or "final action taken" by the Administrator reviewable, it also intended to allow the analytic basis of proposed new source performance standards to be subject to judicial review under the APA. Nebraska Br. 10-11. This as yet undiscovered reading of the CAA is deeply flawed.[7] In particular, Nebraska ignores that both 42 U.S.C. § 7411 and the rulemaking provisions of 42 U.S.C. § 7607(d) are precise in referring to "proposed" and to "promulgated" rules, and that each term has distinct meaning under the CAA. *See* 42 U.S.C. § 7607. "It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *South Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882, 894 (D.C. Cir. 2006) (internal quotation omitted); *see, e.g., City of Chicago v. Environmental Def. Fund*, 511 U.S. 328, 337-38 (1994). Had Congress intended that *proposed* NSPS be subject to immediate review due to their potential impact on "new sources" as defined in the CAA, it could readily have added "proposed" NSPS to the list of specific EPA

---

[7] We think it is fair to say the volume of litigation concerning EPA's CAA rulemaking is rather large, and easily the subject of judicial notice. We therefore find it quite unsurprising that no court has endorsed Nebraska's theory here – allowing judicial review of CAA rulemaking proposals – in the decades of litigation since enactment of the CAA and its major amendments.

actions subject to review in 42 U.S.C. § 7607(b)(1). Congress chose, instead, specifically to authorize review only of final Agency action "promulgating" such standards or requirements. The Proposed Rule remains a proposal unless and until EPA later takes formal action to promulgate it in the form of a final regulation, following the CAA's mandatory procedures.

Fundamentally, this case is about when, and how, a party can challenge Agency consideration of factors in a notice of proposed rulemaking. Nebraska would have this Court distort the APA beyond recognition, essentially nullifying all notions of finality. This would allow challenges to aspects of an agency rulemaking prior to the completion of that rulemaking. Simultaneously, Nebraska also tries to argue that 42 U.S.C. § 7607(b) does not preclude APA review, reading that provision to apply only in the context of challenges to an actual numeric standard promulgated by an agency (but not to the reasoning underlying such a standard).[8] Nebraska Br. at 10. This argument is flatly inconsistent with the statutory language and case law. Moreover, this approach would open District Courts nationwide to APA challenges to proposed agency actions of all types and would impermissibly narrow and infringe upon exclusive jurisdiction of the courts of appeals. This is inconsistent with the D.C. Circuit's interpretation of the scope of its jurisdiction, and inconsistent with the structure of rulemaking review set out by Congress in 42 U.S.C. § 7607(d). *See Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984) ("*T.R.A.C.*") ("[W]here a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals."). *See also Daniels v. Union Pacific R. Co.*, 530 F.3d 936, 942 (D.C. Cir. 2008) (citing *T.R.A.C.* for

---

[8] Nebraska actually asserts that "CAA § 704" does not preclude APA review. Nebraska Br. at 10. There is no "CAA § 704." The APA section that provides for review of final agency actions is 5 U.S.C. § 704, but reference to 5 U.S.C. § 704 does not make sense in the context of the State's brief. Because Nebraska later quotes 42 U.S.C. § 7607(b)(1), EPA presumes that the State intended to rely upon CAA § 307 in this argument.

the proposition that a district court lacks subject matter jurisdiction over challenges because those actions, once final, are subject to exclusive jurisdiction of the D.C. Circuit Court of Appeals).

The briefing in *Coalition for Responsible Regulation v. EPA*, 684 F.3d 102 (D.C. Cir. 2012) ("*CRR*"), a case cited by Nebraska on page 16 of its brief, illustrates both the typical function of 42 U.S.C. § 7607 in the context of a rulemaking challenge and the potential harm caused by permitting premature challenges to CAA rulemakings. *CRR* involved the D.C. Circuit's review of 94 consolidated cases challenging four related EPA rulemakings: EPA's greenhouse gas endangerment finding published at 74 Fed. Reg. 66,496; EPA's Tailpipe Rule published at 75 Fed. Reg. 25,324; EPA's Timing Rule published at 75 Fed. Reg. 17,004; and EPA's Tailoring Rule published at 75 Fed. Reg. 31,514. *See* 684 F.3d at 102, 114-116. Each of the challenged actions was final, not proposed. Many of those 94 consolidated cases resolved in *CRR* involved multiple petitioners. *See, e.g., Southeastern Legal Foundation, Inc. v. EPA*, Case No. 10-1082 (this is one of the 94 consolidated cases, and in this case alone 31 separate petitioners and 3 amici are named). In other words, the single *CRR* decision cited by Nebraska represents challenges to four final actions promulgated by EPA challenged by hundreds of petitioners. Many of those petitioners filed separate comments with EPA asserting a host of concerns based on those parties' interpretations of the CAA, those parties' interpretation of other statutes, and a huge range of other concerns with EPA's proposed and final agency actions. Those concerns resulted in a set of administrative records that, collectively, were tens of thousands of pages long. Attorneys representing the various petitioners and amici filed many of thousands of pages of legal briefs. *See* 684 F.3d at 149 (linking to briefing). If an APA claim was permitted to challenge agency considerations set out in a proposed rulemaking many of the

tens of thousands of commenters to the rules challenged in *CRR* could have filed early challenges in district courts across the country based on widely disparate arguments. Such challenges could lead to inconsistent decisions and inconsistent directives to EPA. Congress avoided this scenario by creating the carefully proscribed CAA judicial review provision set out at 42 U.S.C. § 7607, which among other things, does not allow for challenges to EPA CAA rulemaking proposals.

### III. Nebraska's Argument that the CAA Does Not Create an Adequate Remedy in Court is Based on a Logical Fallacy

As EPA pointed out in its opening brief, the APA provides for review only where there is no other adequate remedy. 5 U.S.C. § 704; EPA Br. at 11 (Dkt. 9). Nebraska argues that the APA must allow for review here because it seeks relief that is not available under the CAA. Nebraska Br. at 9-10. The CAA's remedy allows judicial review of EPA's final action on the new source performance standards is more than legally adequate. In any event, Congress did not do away with finality requirements simply because a party seeks relief to which it is not entitled.

### CONCLUSION

For the foregoing reasons and for the reasons set out in EPA's motion to dismiss and memorandum in support of EPA's motion to dismiss, the Court should grant EPA's Motion and dismiss Nebraska's Complaint for lack of subject matter jurisdiction, or failure to state a claim upon which relief can be granted. In the alternative, the Court may transfer this case the D.C. Circuit if it finds that the interests of justice so require.

                                            Respectfully submitted,

                                            ROBERT G. DREHER
                                            Acting Assistant Attorney General

                                            Environment and Natural Resources Division

Date: April 21, 2014                  */s/ Matthew R. Oakes*
                                            MATTHEW R. OAKES
                                            Environmental Defense Section
                                            P.O. Box 7611
                                            Washington, DC 20044
                                            (202) 514-2686 (Oakes)
                                            Matthew.Oakes@usdoj.gov

OF COUNSEL:

STEVEN SILVERMAN
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

## **CERTIFICATE OF SERVICE**

I certify that on April 21, 2014, I caused a copy of the foregoing **REPLY MEMORANDUM IN SUPPORT OF EPA'S MOTION TO DISMISS** to be filed through the Court's electronic filing system and thereby served on counsel through that system.

/s/ *Matthew R. Oakes*