IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STATE OF NEBRASKA,<br><br>                Plaintiff,<br><br>vs.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; and GINA McCARTHY, Administrator, U.S. EPA,<br><br>                Defendants. | 4:14-CV-3006<br><br>MEMORANDUM AND ORDER |

      This matter is before the Court on the motion to dismiss (filing 8) filed by the defendants, the Environmental Protection Agency and its administrator, Gina McCarthy (collectively, "the EPA"). As the EPA points out, the State of Nebraska's attempt to short-circuit the administrative rulemaking process runs contrary to basic, well-understood administrative law. Simply stated, the State cannot sue in federal court to challenge a rule that the EPA has not yet actually made. Accordingly, the Court will grant the EPA's motion and this case will be dismissed.

## I. BACKGROUND

      This case concerns the EPA's effort, under the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, to draft new standards that would limit emissions of carbon dioxide from newly-built fossil fuel-fired "electric utility generating units" (i.e., the equipment used to produce electricity, such as in a power plant). The EPA's proposal focuses primarily on coal- and natural gas-fired units. The EPA first proposed a new standard on April 13, 2012. *See* Standards of Performance for Greenhouse Gas Emissions From New Stationary Sources: Electric Utility Generating Units, 77 Fed. Reg. 22,392. After considering more than 2.5 million comments, the EPA determined that revisions were warranted. So, the EPA withdrew the 2012 proposal and published a new proposal on January 8, 2014. *See* Standards of Performance, 79 Fed. Reg. 1,430 (the "Proposed Rule").

      The State contends that by basing the Proposed Rule (in part) on information from energy facilities that have received federal assistance, the

EPA has violated a portion of another statute, the Energy Policy Act of 2005, Pub. L. No. 109–58, 119 Stat. 594. To understand this dispute, it will help to briefly review the relevant portions of the Clean Air Act and Energy Policy Act.

### A. THE CLEAN AIR ACT AND NEW SOURCE PERFORMANCE STANDARDS

The Clean Air Act established "a comprehensive national program that made the States and the Federal Government partners in the struggle against air pollution." *General Motors Corp. v. United States*, 496 U.S. 530, 532 (1990). Section 111 of the Clean Air Act sets forth mechanisms for controlling emissions of air pollutants from "stationary sources" (such as factories and power plants). 42 U.S.C. § 7411. The EPA is tasked with establishing "standard[s] of performance" for "new [stationary] sources." 42 U.S.C. § 7411(a)(2), (b). Standards of performance for new sources are sometimes referred to as "new source performance standards" or "NSPS."

A "standard of performance" is defined as

> a standard for emissions of air pollutants which reflects the degree of emission limitation achievable through the application of the <u>best system of emission reduction</u> which (taking into account the cost of achieving such reduction and any nonair quality health and environmental impact and energy requirements) the Administrator determines has been <u>adequately demonstrated</u>.

42 U.S.C. § 7411(a)(1) (emphasis supplied). As the emphasized portions show, an NSPS must be based upon the "best system of emission reduction" which has been "adequately demonstrated." This latter concept lies at the heart of the current dispute. Bearing that in mind, the Court turns to the Energy Policy Act.

### B. THE ENERGY POLICY ACT

Among other things, the Energy Policy Act of 2005 provided federal funding for the development of coal-based energy projects which were designed to "advance efficiency, environmental performance, and cost competitiveness well beyond the level of technologies" then in commercial service. 42 U.S.C. § 15962(a). Although the Energy Policy Act seeks to encourage the development of cleaner energy facilities, it also includes "several provisions that limit the EPA's authority to rely on information from those facilities in conducting rulemaking or taking other action" under various provisions of the Clean Air Act, including the promulgation of NSPS

under section 111. Standards of Performance, Notice of Data Availability, 79 Fed. Reg. 10750, 10752 (Feb. 26, 2014).

In particular, section 402(i) of the Energy Policy Act provides that "[n]o technology, or level of emission reduction, solely by reason of the use of the technology, or the achievement of the emission reduction, by 1 or more facilities receiving assistance under this Act, shall be considered to be . . . adequately demonstrated for purposes of" section 111 of the Clean Air Act. 42 U.S.C. § 15962(i) (emphasis supplied). In other words, the federal government cannot subsidize construction of facilities with the Energy Policy Act and then claim that the facilities for which it paid demonstrate, for Clean Air Act purposes, that the technology is viable.

### C. THE STATE'S CHALLENGE TO THE PROPOSED RULE

As part of its Proposed Rule, the EPA found that certain technology was "adequately demonstrated" for purposes of section 111 of the Clean Air Act. In making that determination, the EPA relied, in part, on data from facilities receiving assistance under the Energy Policy Act. Filing 1 at ¶¶ 4, 18–26; *see e.g.,* Proposed Rule, 79 Fed. Reg. at 1478. The State filed suit, claiming that this violated section 402(i) of the Energy Policy Act. The EPA has responded by moving to dismiss the State's complaint for lack of jurisdiction and failure to state a claim.

## II. STANDARD OF REVIEW
### A. FED. R. CIV. P. 12(B)(1)

A motion pursuant to Fed. R. Civ. P. 12(b)(1) challenges whether the Court has subject matter jurisdiction. The party asserting subject matter jurisdiction bears the burden of proof. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010). Rule 12(b)(1) motions can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008).

A Rule 12(b)(1) motion can be presented as either a "facial" or "factual" challenge. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When reviewing a facial challenge, the Court restricts itself to the face of the pleadings, and the nonmovant receives the same protections as it would facing a Rule 12(b)(6) motion. *Id.* By contrast, when reviewing a factual challenge, the Court considers matters outside the pleadings, and the nonmovant does not receive the benefit of Rule 12(b)(6) safeguards. *Id.* Moreover, unlike a motion for summary judgment, the Court is free to resolve disputed issues of fact. *Jessie*, 516 F.3d at 712.

### B. FED. R. CIV. P. 12(B)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* While the Court must accept as true all facts pleaded by the nonmoving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party, *Gallagher v. City of Clayton,* 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief requires the Court to draw on its judicial experience and common sense. *Id.* at 679.

### III. ANALYSIS

The State brings its challenge to the Proposed Rule under the Administrative Procedure Act (APA), 5 U.S.C. § 500 *et seq*. The APA empowers federal courts to hold unlawful and set aside agency action, findings, and conclusions, if they fail to conform with any of six specified standards. *Marsh v. Or. Natural Res. Council,* 490 U.S. 360, 375 (1989). Among other things, a reviewing court may set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; or in excess of statutory authority. 5 U.S.C. § 706(2).

The State seeks a declaration that the Proposed Rule's consideration of federally-financed facilities is not in accordance with law and in excess of statutory authority. 5 U.S.C. § 706(2)(A), (C). And the State seeks an injunction ordering the EPA to withdraw the Proposed Rule and prohibiting the EPA from future consideration of these facilities as a basis for finding that certain technologies are adequately demonstrated under section 111 of the Clean Air Act. *See* filing 1 at ¶¶ 2–5 & pp. 8–9.

However, the APA only allows judicial review in two situations: when agency action is "made reviewable by statute" and for "final agency action[s] for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The State does not argue that any other statute provides for review. So, the State must show that promulgation of the Proposed Rule was a final agency action and that there is no other adequate remedy. The EPA contends that both prerequisites to judicial review are lacking, and the Court agrees. The Proposed Rule is not a final action, and the Clean Air Act already provides the State with an adequate remedy, albeit in a different federal court.

A. FINAL AGENCY ACTION

The Supreme Court uses a two-part test to determine whether an agency action is "final." First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. *Bennett v. Spear,* 520 U.S. 154, 177–78 (1997). And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow. *Id.*

In this case, it is not necessary to proceed beyond the first prong of *Bennett*. The Proposed Rule is, on its face, an interlocutory and tentative step in an ongoing process. *See, e.g., Proposed Rule,* 77 Fed. Reg. at 1430. That process is set forth in section 111 of the Clean Air Act. As was done here, the EPA first issues a set of proposed regulations. 42 U.S.C. § 7411(b)(1)(B). The EPA must then allow interested parties to submit comments. *Id.*; *see also* 42 U.S.C. § 7607(d). Finally, and only after considering such comments, does the EPA promulgate a final rule, which includes "such modifications as [the EPA] deems appropriate." 42 U.S.C. § 7411(b)(1)(B). The EPA has only reached the proposal stage; it has not "'rendered its last word on the matter' in question;" so its action is not final. *Whitman v. American Trucking Ass'ns,* 531 U.S. 457, 478 (2001) (quoting *Harrison v. PPG Indus., Inc.,* 446 U.S. 578, 586 (1980)).

The State insists that there has, in fact, been a final agency action. In the State's view, section 402(i) "creates a *procedural right* for the State and members of the public and regulated community to have NSPS-rulemaking proceedings conducted without the influence of the Agency's consideration of . . . federally-funded facilities." Filing 11 at 9 (emphasis supplied). In other words, the State argues, section 402(i) prohibits the EPA "from considering instances of deployment of control technology at federally-funded facilities *at any stage* of a rulemaking proceeding." Filing 11 at 18. As best as the Court understands it, the remainder of the State's argument goes as follows: the EPA has already decided to "consider" information from federally-funded facilities, in violation of section 402(i); there is no way to remedy this violation without withdrawing the Proposed Rule; and, therefore, the decision to consider this information should be considered final.

But the State's argument shifts the finality inquiry away from its proper focus: The action complained of here is a component of a proposed rule. That proposal is not a final action. It does not matter if the EPA has purportedly violated section 402(i).[1] The fact that section 402(i) may confer a

---

[1] The merits of this claim are not before the Court. But the Court notes that § 402(i) only forbids the EPA from considering a given technology or level of emission reduction to be adequately demonstrated *solely* on the basis of federally-funded facilities. 42 U.S.C. § 15962(i). In other words, such technology might be adequately demonstrated if that determination is based at least in part on non-federally-funded facilities.

- 5 -

"procedural" right is also beside the point. That is not the same as conferring an immediate right to judicial review. The alleged violation has occurred in the context of a non-final agency action, and the APA expressly defers review of such violations until there has been a final action: "A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704.

The State's argument rests on the premise that one aspect of the Proposed Rule—the decision to consider federally-financed facilities—can be singled out and considered outside the context of the agency action of which it is a part. The Court is not convinced that this is an appropriate way to analyze the issue. But even when the focus is narrowed to this particular aspect of the Proposed Rule, the State cannot show a final agency action. That is because shortly after the EPA issued the Proposed Rule, it sought additional comment on this very aspect of the proposal.

Specifically, the EPA solicited further comment on whether the EPA was correct in its "preliminary interpretation" of section 402(i)—that it only forbids the EPA from relying *solely* on information from federally-financed facilities. Standards of Performance, Notice of Data Availability, 79 Fed. Reg. at 10752. The EPA also requested comment on whether any of the evidence presented in the Proposed Rule may not be evaluated due to the limits imposed by section 402(i), and if so, whether the remaining evidence is sufficient to support the EPA's finding of "adequate demonstration." Technical Support Document, *Effect of EPAct05 on BSER for New Fossil Fuel-fired Boilers and IGCCs*, Docket EPA-HQ-OAR-2013-0495 (January 8, 2014) [Filing 9-3 at 1, 17].

All of this goes to show that the EPA is still in the process of considering the very aspect of the Proposed Rule that the State insists is final. The EPA has expressly not taken "a definitive position on the issue," *DRG Funding Corp. v. Secretary of Housing and Urban Development*, 76 F.3d 1212, 1214 (D.C. Cir. 1996), and so there has not yet been a final agency action. In other words, even if this small step in the process could somehow become a "final action," *the EPA has yet to even take that step.*

To summarize: the EPA gets first crack at deciding whether the Proposed Rule should be withdrawn or adopted before anyone can demand that a federal court act on it. And as the Court next explains, the State also failed to show the other prerequisite for review under the APA: the lack of an adequate judicial remedy. 5 U.S.C. § 704.

### B. THE CLEAN AIR ACT PROVIDES AN ADEQUATE REMEDY

Review under the APA is precluded where Congress has otherwise provided a "special and adequate review procedure." *Bowen v. Massachusetts*,

- 6 -

487 U.S. 879, 904 (1988). The Clean Air Act contains its own framework for obtaining judicial review, which includes review of the EPA's rulemaking under section 111. 42 U.S.C. § 7607(b)(1). To be adequate, the alternative remedy need not provide relief identical to that offered by the APA, so long as it offers relief of the "same genre." *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009). The Clean Air Act offers such relief.

The State seeks a declaration under the APA that the Proposed Rule was not drafted in accordance with law and is in excess of the EPA's statutory authority. 5 U.S.C. § 706(2)(A), (C). The judicial review provisions of the Clean Air Act similarly allow a court to reverse any agency action found to be (among other things) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory . . . authority." 42 U.S.C. § 7607(d)(9)(A), (C). The State should find this remedy adequate. *See Garcia*, 563 F.3d at 522.

The State will still have to wait until there is a final agency action, as § 7607(b) only authorizes review of final agency actions. *See,* 42 U.S.C. § 7607(b)(1); *Portland Cement Ass'n v. E.P.A.*, 665 F.3d 177, 193–94 (D.C. Cir. 2011). But that hardly renders the remedy inadequate, when the same is true under the APA. The only relevant difference is that, under the Clean Air Act, the State must seek relief in the Court of Appeals for the District of Columbia. *See,* 42 U.S.C. § 7607(b)(1); *Missouri v. United States*, 109 F.3d 440, 441 (8th Cir. 1997).

## IV. CONCLUSION

The State has jumped the gun. If Congress had wished to allow immediate, interlocutory appeals of proposed rulemaking under the Clean Air Act, it could have done so. It did not, and for good reason: making environmental regulations is difficult and complicated enough without having federal judges weigh in at every step along the way. Instead, as dictated by basic and well-established principles of administrative law, the State must wait for a final agency action. Accordingly,

IT IS ORDERED:

1. The EPA's motion to dismiss (filing 8) is granted;

2. This case is dismissed; and

3. A separate judgment will be entered.

Dated this 6th day of October, 2014.

- 8 -

BY THE COURT:

_____
John M. Gerrard
United States District Judge